**ORDERED in the Southern District of Florida on** _10/30/07_.



_Raymond B. Ray, Judge_
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:

Kenneth Hawkins,                    Case No. 05-22100-BKC-RBR

    Debtor.                       Chapter 7

_____/

### ORDER FINDING VIOLATION OF THE DISCHARGE ORDER

THIS MATTER came before the Court for hearing on June 7, 2007 and July 12, 2007, upon the _Motion For Contempt , Motion For Sanctions Pursuant to 11 USC 524a Discharge Injunction Violation Against Jay Hoover and Michael Feinstein_ (D.E. 11) Filed by Debtor Kenneth Hawkins and the responses thereto (D.E. 17). On June 7, 2007 the Court received into evidence testimony and exhibits. At the July 12, 2007 hearing the parties stipulated to several facts on the record. Based on the stipulated facts, testimony, admitted evidence, and arguments of counsel the Court makes the following findings of fact and conclusions of law.

Findings of Fact

Jay Hoover lent money to Kenneth Hawkins, the Debtor. The loans occurred on more than one occasion. No monies were lent after 10th of December 2001. The loans are not substantiated by written notes. There are no mortgages. The debts are unsecured and they were not collateralized. No money was ever lent to the Debtor's wife. The first demand for

repayment, after the last of the monies had been lent, occurred in January 2002. However, there were several collection attempts before the January 2002 date and after it. Turning to each of the loans.

There were three separate loans made by Hoover to the Debtor. The Debtor testified that the first loan occurred in 1994. This loan was in the amount of $100,000.00. The proceeds from the first loan were utilized for several purposes. A portion of the loan was used as a down payment on a home. This, the first home, was subsequently sold. The sale of the Debtor's first home did not result in any surplus after mortgage payment and sale expenses. Thus, no monies from the first home were rolled into the second home.

The Debtor then borrowed $200,000.00 in 1997. Later that year the Debtor married his current wife. Shortly after their wedding they purchased and moved into their current home. Only a portion of the $200,000 loan was used as a down payment on the new home.

The last loan occurred on July 19, 2000. It was for the amount of $288,567.36. This loan was used primarily for business expenses. The Debtor testified that none of the third loan was spent on the marital home. The Debtor borrowed a total of $588,567.36 over the course of 6 years.

However, the Debtor did make several payments. The Debtor testified that when he sold his first home in 1997, approximately $50,000.00 of the first loan had been repaid. Hoover had also demanded repayment of the balance. The Debtor testified that by August 27, 1998, he had repaid $112,000.00 on the second loan. He further testified that between August 27, 1998, and April 15, 1999, he made periodic cash payments totaling another $18,000.00. The balance of the second loan was paid in full on April 20, 1999. This balance was paid off when the Debtor refinanced his marital home. Finally, soon after the third loan was made Hoover made a demand for payment. Shortly after this demand the Debtor paid Hoover $160,000.00.

On April 14, 2005, the Debtor filed his no asset chapter 7 case. The Debtor listed the marital home as exempt, no objection to this claim of exemption was made. Hoover was listed as a creditor holding an unsecured, contingent, unliquidated and disputed debt. He further admits that he received notice and knew of Debtor's bankruptcy filing. On July 27, 2005, the Debtor received his discharge. Hoover acknowledges receiving notice of the discharge. Hoover took no action within the bankruptcy, or prior to it, to collect on his debt or to reduce it to judgment. No proof of claim was ever filed by Hoover.[1] Nor did he challenge the dischargeability of his debt. He never filed an adversary proceeding to impose his alleged equitable lien. Alternatively, he could have sought stay relief to pursue his alleged equitable lien claim in state court, this too was never done. Without Hoover raising any issue the Debtor's bankruptcy case proceeded to discharge (C.P.7, July 25, 2005) and subsequent closing (C.P. 8, July 27, 2005).

Some 15 months after the closing of the bankruptcy case, Hoover filed a state court action seeking the imposition of: (1) a constructive trust and (2) an equitable lien over the Debtor's marital home. The basis for these causes of action are the pre-petition monies lent by Hoover to the Debtor. There are no allegations of fraud made in the state court complaint, rather it seeks redress on the theory that Hoover lent money to the Debtor and the Debtor benefitted from the funds received. The Debtor asserts that any claim Hoover may have was discharged by his chapter 7 bankruptcy.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). The issue in this case is did the discharge injunction discharge a debt; when the

---

[1] The Court is aware that in a no-asset chapter 7 case there is no deadline for filing a proof of claim and that no such filing is required. Nonetheless, Creditors are not barred from filing a proof of claim.

debt was owed to a creditor who had actual notice of the bankruptcy, was scheduled as an unsecured creditor, took no action at all, and after the case is closed and the discharge granted seeks to assert a purported equitable lien on the Debtor's exempted homestead.

The analysis of this issue will require an examination into: (1) the effect of a chapter 7 discharge; (2) the basis, if any, of an equitable lien or constructive trust in favor of Hoover; (3) equitable doctrines that prevent Hoover from challenging his classification as an unsecured creditor.

### Effect of a Chapter 7 Discharge

The first step in answering this question is to examine the effect of a chapter 7 discharge. A chapter 7 discharge, 11 U.S.C. §727, voids all of the debtor's personal liability on a debt. See *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)(noting that a "bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving intact another -- namely, an action against the debtor *in rem*). The discharge further prevents a pre-petition debt holder from attaching or perfecting a lien on the debtor's property. See *In re Briney*, 200 F.3d 225, 228 (4th Cir. 1999)(holding that a discharge extinguished the debt which would serve as the basis for the lien, as such the lien could not attach and the property could not be foreclosed on).

The clear conclusion from this line of law is that any personal obligation that the Debtor owes Hoover has been discharged. It is also clear that if Hoover's debt remains classified as unsecured then it was also discharged. Therefore if Hoover hopes to recover any of the money he lent, he must have a clear unavoidable lien against the property and he must also not be bound by the Debtor's good faith classification of his debt as unsecured. In other words, he must have the ability to proceed strictly *in rem* against the debtor's home.

The general rule of law is that a properly secured claim holder may proceed against the

collateral securing the debt notwithstanding the discharge. This rule stems from the Supreme Court decision of *Long v. Bullard*, which is codified in 11 U.S.C. §522(c). *See Johnson v. Home State Bank*, 501 U.S. at 82-83. Therefore, in order for Hoover to prevail or proceed in state court he must: (1) have an equitable lien and (2) an equitable lien must be strictly an *in rem* proceeding. However, even if Hoover may have an equitable lien, he may be barred by equitable doctrines from either: (a) asserting the lien; or (b) challenging his classification as an unsecured creditor which would render the debt discharged.

### The Basis, If Any, For Hoover's Claim of an Equitable Lien or Constructive Trust

In Florida an equitable lien may be "founded upon two bases: (1) a written contract that indicates an intention to charge a particular property with a debt or obligation; or (2) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case." *See Dewing v. Davis*, 117 So. 2d 747, 750 (Fla. Dist. Ct. App. 1960)(citing *Jones v. Carpenter*,106 So. 127, 129 (Fla. 1925)); *In re Aloisi*, 261 B.R. 504, 509-10 (Bankr. M.D. Fla. 2001). It is without question that no written contract upon which to impose an equitable lien exists in this case. Therefore, any claim that Hoover may have must fit into the second justification, namely, that the circumstances of the case require the imposition of an equitable lien.

The Florida Supreme Court has stated that an equitable lien may be imposed in limited circumstances where a debtor fraudulently procured funds to invest in, purchase, or improve a homestead. *See Palm beach Savings & Loan Assoc. v. Fishbein*, 619 So. 2d. 267, 270 (Fla. 1993); *Dowling v. Davis*, 2006 U.S. Dist. LEXIS 55541, at *9 (M.D. Fla. 2006); *Isaacson v. Isaacson*, 504 So. 2d 1309,1310(Fla. Dist. Ct. App. 1987)(noting that "when an equitable lien is sought against homestead real property, some fraudulent or otherwise egregious act by the beneficiary of the homestead protection must be proven.");*Havoco of Am., Ltd. v. Hill*, 255 F.3d

1321,1321 (11th Cir. 2001).

Bankruptcy Courts have traditionally turned to equitable liens in response to some fraudulent act by an individual when the fraudulent act related to the acquisition or improvement of the homestead. See *In re Grocki*, 147 B.R. 274, 278 (Bankr. S.D. Fla. 1992)(imposing an equitable lien on homestead where debtor used fraudulently obtained funds to pay down a mortgage);*DirecTV, Inc v. Deerey (In re Deerey)*, 2007 Bankr. LEXIS 2300 at * 23-23 (Bankr. M.D. Fla. 2007)(refusing to impose an equitable lien with funds obtained from illegal activities unrelated to the improvement of the homestead); *Merch. & Contrs. Capital Corp. v. Crum (In re Crum)*, 294 B.R. 402, 405 (Bankr. M.D. Fla. 2003)(denying the imposition of an equitable lien where the fraudulent or egregious conduct could not be traced to the purchase of the homestead).

Based on these principles Hoover's claim for an equitable lien is deficient. He has failed to even plead that the Debtor acted in a fraudulent or otherwise egregious manner. Rather, his theory is that he lent money to the Debtor and that the Debtor used these loans to purchase his home. Even if Hoover's position that the Debtor "used proceeds loaned by Hoover to pay credit card loans, down payments, closing costs, property taxes, mortgage payments, and insurance" on the home is accepted as true, there are no allegations that the Debtor undertook any egregious or fraudulent conduct. See Response In Opposition to Motion for Sanctions (D.E. 9). Accordingly, as argued in front of this Court there is no basis for a finding that an equitable lien exists.

However, even if fraud or egregious conduct was found or is not required, Hoover has failed to trace the funds he loaned into the current homestead of the Debtor. In order to collect on an equitable lien the alleged lien holder must be able to trace the loaned funds into the home of the Debtor. See *In re Popek*, 188 B.R. 701, 703 (Bankr. S.D. Fla. 1995)(declining to impose

Page 6

an equitable lien partly based on the creditors inability of objecting creditor to show that money lent was used to obtain the homestead); *accord Bank Leumi Trust Co. v. Lang*, 898 F. Supp. 883, 888-89 (S.D. Fla. 1995)(refusing to impose an equitable lien where the money was borrowed for a legitimate purpose unrelated to the homestead and could not be traced directly into its purchase or improvement).

In *Popek* this Court refused to impose an equitable lien. The creditor who was seeking the equitable lien was unable to show that the money lent by the creditor was used to purchase the home. *In re Popek* 188 B.R. at 704. The fact that the Debtor may have undertaken an alleged fraud was insufficient to disallow a homestead exemption and impose an equitable lien. *Id.*

The situation currently before the Court is no different. After examining the transactions that occurred between the Debtor and Hoover it is evident that there is not an iota of Hoover's money in the Debtor's current residence. Only a portion of the first loan was used in the purchase of the pre-marital home. Only a portion of the second loan was used in the marital home. Further, there was no surplus from the sale of the pre-marital. As such the entire first loan cannot be traced into the current home. The second loan was repaid in full on April 20, 1999. As such no money from the second loan can be traced into the marital home. Finally, the last loan was used primarily for business expenses. Therefore it cannot be traced into the home. As such Hoover has failed to meet the requirements for an equitable lien.

Hoover is no more successful on his claim for a constructive trust. A "constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Bender v. Centrust Mortgage Corp.*, 51 F.3d 1027, 1029 (11th Cir.1995)(citation omitted). The elements of a constructive trust are: "(1) a confidential relationship, by which (2) one acquires

Page 7

an advantage he should not, in equity and good conscience retain."*Bender v. Centrust Mortgage Corp.*, 51 F.3d at 1030(citations omitted). There has not been any allegation that the Debtor had a confidential relationship with Hoover. Or that he has acquired an advantage he should not retain. The Debtor borrowed monies from Hoover, he paid much of it back. The rest he lawfully discharged through his bankruptcy. Using the bankruptcy process in the manner it was intended is not an advantage. A person who undergoes bankruptcy pays a heavy price for their discharge. This includes, but is not limited to, the inability to file a new case for several years and the unfortunate stigma of having been bankrupt. Accordingly, Hoover cannot meet the requirements for the imposition of a constructive trust.

### Equitable Doctrines Bar Hoover From Challenging His Status As an Unsecured Creditor

Since Hoover lacks a valid lien against the home he is unable to proceed *in rem* against it. However, even if he was able to meet the requirements of an equitable lien, under the facts of this case Hoover is barred by laches, equitable estoppel, and general principles of equity from challenging the designation of his claim as unsecured. As such the debt owed to him is subject to the discharge injunction. Many of the same equitable principles will also bar Hoover from asserting an equitable remedy such as an equitable lien.

#### Laches

Claims in equity are governed by the doctrine of laches. *Lorimer v. Berrelez*, 331 F. Supp. 2d 585, 594 (E.D. Mich. 2004). The doctrine of laches has two elements: (1) an unreasonable delay by the plaintiff in bring the claim and (2) prejudice to the defendant. *Id; Kan. v. Colo.*, 514 U.S. 673, 688 (1995)(stating "laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.").

There is no doubt that a claim for an equitable lien is a claim in equity. The very

definition of an equitable lien states that it may be imposed, absent a written instrument, only upon "general considerations of right or justice." *Dewing v. Davis, supra*. Furthermore, Bankruptcy courts are courts of equity. *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455,(1940)(" A bankruptcy court is a court of equity..."). Accordingly, if the two requirements for laches are present then laches is applicable to prevent Hoover from asserting his equitable lien.

The first requirement is that there be a "lack of diligence" by the party against whom laches is asserted. *Kan. v. Colo., supra*. Hoover had full notice of the bankruptcy proceeding. He was properly scheduled as a creditor. Furthermore, he received timely notice alerting him of his opportunity to file a claim, to challenge the Debtor's discharge, or to bring an adversary proceeding to adjudicate the status of the debt the Debtor owed him. The time to step forward with a fully matured equitable lien claim was during the bankruptcy, not some 15 months after it. Hoover's failure to act cannot be described as anything but a lack of diligence.

In addition, Hoover had full notice that he was scheduled as an unsecured creditor. The time to challenge that classification was during the bankruptcy. Such classifications are made under penalty of perjury. It is a clear lack of diligence on the part of Hoover to not challenge his debt being classified as a unsecured. His failure to do so is sufficient to raise the laches to a later reclassification of his debt.

Based on the foregoing it is evident that the first element required for laches has been met. Hoover showed a lack of diligence in not taking any action during or before the bankruptcy proceeding.

The second element of laches is whether the opposing party has suffered prejudice as a result of this delay. *Kan. v. Colo., supra*. It is without doubt that had Hoover brought his claims during the bankruptcy the Debtor would have been able to deal with them at that time. He would

have been able to file an adversary proceeding to determine the dischargeability of the debt. Alternatively, he would have been able to file a motion to avoid the lien if the lien had been declared to exist by any court. Instead two years later, the Debtor has been deprived of being able to timely bring forward these motions.

Bankruptcy is a process whereby a line in time is drawn. All financial issues that arouse before that line is drawn are dealt with at the same time. The Supreme Court has described bankruptcy "as a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Hoover's actions have undermined every single aspect of the "fresh start" purpose of bankruptcy as articulated above.

Hoover has undermined the Debtor's ability to reorder his affairs through the bankruptcy process. Hoover had full notice of the bankruptcy proceeding. He was properly scheduled as a creditor. Furthermore, he received timely notice alerting him of his opportunity to file a claim, to challenge the Debtor's discharge, or to bring an adversary proceeding to adjudicate the status of the debt the Debtor owed him. By choosing to sit on his rights Hoover has deprived the Debtor of the opportunity to timely reorder his affairs. The Debtor has had to reopen a case which had been closed for more than 2 years and litigate a claim that could have been handled easily and expeditiously during the first go around. As such, 2 years after the closing of his case, the Debtor is still dealing with pre-petition debt that should have been dealt with during his bankruptcy.

Hoover's actions have also prevented the Debtor from "making peace with his creditors." Instead of neatly and orderly dealing with all of his creditors, the Debtor is now dealing individually with Hoover. Instead of solely litigating the issues in one forum, there are now

Page 10

lawsuits in state court and this Court. Ultimately, Hoover's delay has prevented the Debtor from dealing with Hoover's debt at the time when he was dealing with all his other debts.

Hoovers actions have also prevented the Debtor from moving forward with his life. The Debtor after receiving his discharge should have been allowed to enjoy his new position. He had an opportunity to be free of his past financial mistakes. Bankruptcy is not an easy process as is evidenced by the vast number of people who fail in their attempt to secure a "fresh start". The Debtor should have been allowed to enjoy his, instead here he is two years later litigating with a creditor who knew he was owed a debt and also had full and fair notice of the bankruptcy proceeding.

However, Hoover has not just undermined the "fresh start" policy of the bankruptcy code. He has also undermined the policy of "equality of distribution" among similarly situated creditors. *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 L. Ed. 2d 46, 110 S. Ct. 2258 (1990); *Planas v. Feltman (In re Planas)*, 1998 U.S. Dist. LEXIS 20524 at 10 (S.D. Fla. Aug. 26, 1998). All other unsecured creditors received no distribution from the Debtor's estate. Hoover, if he is an unsecured creditor deserves no greater distribution for his pre-petition debt. The appropriate time to determine his creditor status was during the bankruptcy so that he would receive the same distribution as other similar creditors. It is inequitable for Hoover, to sit out the entire bankruptcy process let all other debts and encumbrances fall by the wayside and then bring his action knowing that the Debtor's assets are now unencumbered. This "waiting in the weeds" approach, if successful, would serve to discourage creditors from coming forward during the bankruptcy and addressing their claims there.

Accordingly, this Court finds as a matter of law that Hoover's equitable lien claim is barred by the equitable doctrine of laches. Furthermore any attempt to reclassify his debt as anything but unsecured is barred by laches. Accordingly, with the discharge injunction effective

Page 11

against all unsecured debt and Hoover unable to challenge the classification of his debt as unsecured, Hoover's debt has been discharged. The Court will now examine Hoover's action in terms of equitable estoppel.

### Equitable Estoppel

The doctrine of equitable estoppel "allows a person's act, conduct or silence when it is his duty to speak, to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action." *First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough*, 81 F.3d 1310, 1317 (4th Cir. 1996). The doctrine applies in the bankruptcy context when four criteria are met: 1) the party estopped knew the relevant facts; 2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; 3) the party acting was ignorant of the true facts; and, 4) the party acting relied on the conduct to its injury. *Id.*; *see also In re Momentum Manufacturing Corp.*, 25 F.3d 1132, 1136 (2nd Cir. 1994).

In this case Hoover knew of his claim against the Debtor. He also knew that he held an alleged equitable lien. Hoover's failure to raise his claim during the bankruptcy is clear evidence that he intended to lie in wait until all other creditors were discharged and then pounce on the unencumbered assets. The Debtor, as is evidenced by his scheduling of Hoover's debt believed that Hoover held nothing more than an unsecured claim. Hoover's failure to act prevented the Debtor from taking action to determine the kind of debt Hoover held; or alternatively, bring the appropriate motion to avoid the lien. There has also been substantial prejudice to the Debtor's fresh start as discussed above. Therefore it is appropriate to apply the doctrine of equitable estoppel in this case and prevent Hoover from asserting his claim.

To put it another way. Hoover knew of his alleged equitable lien. He also knew of the Debtor's classification of his debt as unsecured. He allowed and intended for the Debtor to rely

upon his silence. The Debtor did not know that Hoover would later claim to hold an equitable lien. Finally, the Debtor has been deprived of his fresh start and an efficient and clean bankruptcy process because of Hoover's silence. Accordingly, Hoover is equitably estopped from challenging the classification of his debt as unsecured. Since it is unsecured it is subject to the discharge injunction.

### General Equity

Finally, under general principles of equity Hoover ignored the bankruptcy proceedings at his own peril. He must now live with those consequences. In *In re Gregory*, the Ninth Circuit held when the holder of an unsecured "receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983). In *Gregory* an unsecured creditor failed to take any steps to challenge the legality of a chapter 13 plan that would pay nothing to unsecured creditors. The Court affirmed the decision to hold that the unsecured debt had been discharged and the right to object to the plan had passed. *Id.*

Several cases have held that the debtor's failure to raise or schedule a cause of action during a bankruptcy will foreclose the Debtor's ability to pursue the claim after the bankruptcy has concluded. *E.g. Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)("Failure to mention this potential claim either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution precludes this later independent action."); *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992); *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 Bankr. 374, 377 (Bankr. 9th Cir. 1993). So too a creditor who knows of the bankruptcy, is scheduled in good faith as an unsecured creditor,

and is fully aware of his rights prior to the close of the bankruptcy should be prevented from later asserting that based on equitable principles they are a secured lien holder. Such a creditor has a duty to adjudicate his claim through the bankruptcy process, which may simply mean seeking stay relief to pursue a claim in a non-bankruptcy forum.

In this case Hoover received notice that the Debtor filed for bankruptcy. He knew he was scheduled as an unsecured creditor in the bankruptcy case. All of the events that led to the Debtor's indebtedness had already transpired. Hoover knew exactly how much he was owed and how much he had been repaid. Yet he never challenged the classification of his debt. Further he never sought to exert his rights at precisely the moment he should have been most compelled to do so. He never sought to have his alleged equitable lien declared to be valid by a court. His failure to act when he should have acted is exactly the kind of inaction that is to be prevented if the bankruptcy process is to have a remote chance of success at fulfilling its mission. Accordingly, under principles of general equity this Court declines to allow Hoover to reclassify his debt as anything other then unsecured, thus it is properly subject to the discharge injunction.

The parties framed the issue of this case as whether Hoover's alleged claim is an *in rem* proceeding or it is *quasi in rem*. Hoover has relied heavily on *Wofford v. Scott (In re Scott)*, 347 B.R. 917 (Bankr. M.D. Fla. 2006). That case however is readily distinguishable from the case currently before this Court. In *Wofford* the equitable lien issue was brought during the pendency of the bankruptcy case not some two years later. In that case the equitable lien issue was determined in an adversary proceeding on a timely basis before the bankruptcy court. *Wofford v. Scott (In re Scott)*, 347 B.R. 917, 918 (Bankr. M.D. Fla. 2006). Accordingly, *Wofford* is inapplicable to the proceedings at hand.

Based on the foregoing it is unnecessary for the court to continue on and determine

whether indeed the cause of action that Hoover seeks to bring is *in rem* or *quasi in rem*. It is sufficient to reiterate that: (1) any personal liability has been discharged; (2) the debt owed to Hoover was discharged because it was scheduled as an unsecured debt and Hoover failed to challenge that classification; (3) any challenge to the classification of Hoover's debt as unsecured is barred by laches, equitable estoppel and general principles of equity; (4) any assertion of an equitable lien is now barred by laches and equitable estoppel. Accordingly, the debt is deemed to have been discharged.

Accordingly, based on the foregoing it is, **ORDERED and ADJUDGED**:

1. That Hoover's debt was discharged. As such Hoover and his Counsel's attempts to collect on the debt are actions which violate the discharge injunction.

2. Based on these findings the Court hereby **ORDERS** Hoover to dismiss with prejudice his state court action to the extent it seeks redress for discharged debts.

3. Upon further motion and request by the Debtor the Court will schedule an evidentiary hearing to consider the issue of any additional sanctions to be imposed against Hoover and his Counsel.

###

Clerk of the Court shall provide copies to:

Office of the US Trustee
Kenneth Hawkins
Ivan J Reich, Esq
Jay Hoover
Michael Feinstein, Esq.